IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| ENRIQUE and K. RENEE PALACIOS, *on behalf of themselves and all others similarly situated*, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 2:14-mn-00001-DCN |
| vs. | ) ) | No. 2:14-cv-03637-DCN |
| PELLA CORPORATION, | ) ) ) | **ORDER** |
| Defendant. | ) ) | |

This matter is before the court on a motion to dismiss filed by defendant Pella Corporation ("Pella"), plaintiffs' motion to dismiss seeking to dismiss plaintiff Enrique Palacios as class representative, and plaintiffs' motion for a protective order. For the reasons set forth below, the court grants Pella's motion to dismiss, grants plaintiffs' motion to dismiss Enrique Palacios as class representative, and grants plaintiffs' motion for protective order.

## I. BACKGROUND

On July 30, 2014, plaintiffs Enrique ("Enrique") and K. Renee ("Renee") Palacios (collectively, the "Palacios") filed a class action complaint against Pella in the United States District Court for the Eastern District of Louisiana, alleging jurisdiction based on diversity of citizenship. The complaint brings the following five causes of action[1]:

---

[1] These claims are asserted on behalf of a state-wide class. The complaint originally included the following six national class action claims: (1) strict liability; (2) negligence; (3) breach of express warranty; (4) breach of implied warranties; (5) negligent misrepresentation; (6) fraud by uniform written misrepresentation and omission. However, in their response, the Palacios indicated that they are willing to limit the scope of their complaint to the Louisiana class. Pls.' Resp. 1 n.1. During the February 9, 2015 hearing, the parties stipulated the dismissal of the national class action claims. Feb. 9, 2015 Hr'g Tr. 110:13–25. Therefore, the national class claims are hereby dismissed.

1

(1) breach of express warranty; (2) design defect; (3) construction or composition defect; (4) redhibition; and (5) declaratory relief.

The Palacios purchased Pella Architect Series windows in conjunction with the construction of their home in New Orleans, Louisiana in 2001. Compl. ¶ 15. At some point, water began to penetrate the windows, which caused condensation, wood rot, leaks, and other failures. Id. ¶ 67. The water intrusion caused damage to other property in their home, including the structure, wall cavity, adjoining finishes, drywall, and other personal property. Id. ¶ 70. The Palacios notified Pella that their windows were leaking, and Pella provided replacements for some of the windows. Id. ¶ 71. The Palacios, however, were required to pay for installation and finishing. Id.

The Palacios contend that the windows are defective in that water permeates the windows through "four common leakage paths: (a) the glazing pocket; (b) the aluminum cladding and wood; (c) the crank hardware and fasteners; and, (d) the frame to sash joint." Id. ¶ 23. The Palacios further allege that Pella knew, or but for its negligence should have been aware, of the defective condition of its windows. Id. ¶ 32.

Pella filed the instant motion to dismiss on October 20, 2014. The Palacios opposed the motion on November 4, 2014, and Pella replied on December 8, 2014. On January 9, 2015, the Palacios filed a motion to dismiss Enrique as class representative and a motion for a protective order. Pella responded to both motions on January 26, 2015. These motions have been fully briefed and are ripe for the court's review.

## II.  STANDARDS

### A.    Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted."  When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true.  Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief."  Id. at 679.  A complaint must contain sufficient factual allegations in addition to legal conclusions.  Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

### B.    Applicable Law

This case is predicated on diversity jurisdiction and was filed in federal court, so it is governed by state substantive law and federal procedural law.  Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 416 (2010) (citing Hanna v. Plumer, 380 U.S. 460, 465 (1965)).  "In multidistrict litigation, the law of the transferee circuit governs questions of federal law."  In re KBR, Inc., 736 F. Supp. 2d 954, 957 (D. Md. 2010) modified on reh'g sub nom. In re KBR, Inc., Burn Pit Litig., 925 F. Supp. 2d

752 (D. Md. 2013) vacated and remanded on other grounds, 744 F.3d 326 (4th Cir. 2014); see also In re Gen. Am. Life Ins. Co. Sales Practices Litig., 391 F.3d 907, 911 (8th Cir. 2004); Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993); In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1176 (D.C. Cir. 1987); cf. Bradley v. United States, 161 F.3d 777, 782 n.4 (4th Cir. 1998) (applying Fourth Circuit law to questions of federal law in a case transferred from the Fifth Circuit). Therefore, this court must apply Louisiana substantive law and Fourth Circuit procedural law.

### III.  DISCUSSION

#### A.     Pella's Motion to Dismiss

Pella moves to dismiss all of the Palacios' claims for failure to state a claim upon which relief can be granted and because the Palacios filed the present action well after the expiration of the applicable prescriptive periods. Before discussing any prescriptive periods, the court will analyze whether equitable estoppel is applicable to the Palacios' claims.

#### 1.      Equitable Estoppel

The Palacios' claim that the relevant prescriptive periods are tolled by the doctrine of equitable estoppel. Pls.' Resp. 5.

"Equitable estoppel has been defined as the effect of voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct." Knippers v. Lambard, 620 So. 2d 1368, 1374 (La. Ct. App. 1993). "The doctrine is based on equitable considerations of good faith and is

designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations or silence." Id.

The following three requirements must be met in order for equitable estoppel to be applied: "(1) a representation by conduct or word by the person sought to be estopped; (2) justifiable reliance thereon; and, (3) a change in position because of that reliance to the detriment of the party asserting estoppel." Id. at 1375. "Estoppel is not favored by Louisiana courts" and "[i]t is invoked sparingly because it acts to bar the normal assertion of rights." Id. at 1374–75. "Any party seeking to invoke estoppel must specifically plead and prove the factual elements of the doctrine." Id.

The Palacios assert that Pella made numerous representations regarding the windows at the time of sale on which they relied to their detriment. Pls.' Resp 6. However, "[i]f the evidence reveals that the asserting party had actual knowledge, or a ready and convenient means of determining the facts concerning representations made, equitable estoppel will not lie." Knippers, 620 So. 2d at 1375. As more fully discussed below, the Palacios knew that their windows were leaking by at least January 2007, evidenced by the January 16, 2007 service request attached to the present motion.[2]

---

[2] The Fourth Circuit has stated that, in deciding a motion to dismiss:

> A court may . . . consider a 'written instrument' attached as an exhibit to a pleading, see Fed. R. Civ. P. 10(c), 'as well as [documents] attached to the motion to dismiss, so long as they are integral to the complaint and authentic.' Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013). Rule 10(c) states, "[a] copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." Fed. R. Civ. P. 10(c) (emphasis supplied).

"'[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the [c]ourt may consider the same without converting the motion to one for summary judgment.'" Perkins v. US Airways, Inc., No. 6:14-cv-2577, 2015 WL 5783561, at *4 (D.S.C. Sept. 30, 2015) (quoting Gasner v. Cty. of Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va.1995), aff'd, 103 F.3d 351 (4th Cir. 1996)). The Palacios do not dispute the authenticity of the 2007 service request. Further, the service request is integral to the Palacios' breach of express

5

Therefore, the Palacios had actual knowledge of the condition of the windows by January 2007, at the latest. Further, the Palacios had a ready and convenient means of determining the facts concerning the representations made by Pella as to the quality of their windows by 2007—all they had to do was look at the leaking windows themselves. Therefore, even if the court were to toll the prescriptive period under the equitable estoppel doctrine, the period would only toll until January 2007 when it is undisputed that the Palacios had actual knowledge of the leaking windows.

The court finds that equitable estoppel does not apply under these circumstances to toll the applicable prescriptive periods.

### 2.     Prescriptive Periods

Pella argues that all of the Louisiana claims were brought outside the applicable prescriptive periods. Def.'s Mot. 19. Of statutes of limitation, the Supreme Court has stated the following:

> Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate.

---

warranty claim. See Compl. ¶¶ 154–55 ("Plaintiffs and Class Members filed warranty claims with Pella, but Pella has failed to adequately respond to Plaintiff's warranty claims. In addition, Pella failed to provide full replacement Windows to Plaintiffs and Class Members . . . ."). The Palacios should not be permitted to avoid dismissal by failing to adequately plead the facts underlying their claims, including the dates on which they filed their warranty claims.

Further, the Palacios' opposition to the motion to dismiss focuses on the reasonableness of not filing suit within the one year statute of limitations and not whether they filed a warranty claim. They do not dispute that they had notice of the leaking windows. Most importantly, the Palacios do not challenge the court's consideration of the service request or its authenticity and do not argue that the court should not consider it at this stage in the litigation. Therefore, the court will consider the service request attached to Pella's motion to dismiss without converting the motion into a motion for summary judgment.

Chase Sec. Corp. v. Donaldson, 325 U.S. 304, 314 (1945) (internal citation omitted). With these principles in mind, the court will analyze whether the Palacios brought their claims within the applicable prescriptive periods.

### a.     LPLA Claims

The Palacios' claims under the Louisiana Products Liability Act ("LPLA")[3] are subject to a one-year prescriptive period. Am. Zurich Ins. Co. v. Caterpillar, Inc., 2012-270, p. 2 (La. App. 3 Cir. 10/3/12); 99 So. 3d 739, 741 (citing La. Civ. Code Ann. art. 3492). La. Civ. Code Ann. art. 3492 provides that "[d]elictual actions are subject to a liberative prescription of one year" which "commences to run from the day injury or damage is sustained." "The prevailing wisdom is that prescription begins to run when the defect manifests itself, not on the date the underlying cause of the defect is found." Am. Zurich, 2012-270, p. 3; 99 So. 3d at 741. "Prescription commences and continues when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." Knipper, 620 So. 2d at 1371 (citing Percy v. State, E.A. Conway Mem'l Hosp., 478 So. 2d 570 (La. App. 2d Cir. 1985)). However, the Supreme Court of Louisiana has applied the jurisprudential doctrine of contra non valentem as an exception to the statutory one-year prescriptive period. See Marin v. Exxon Mobil Corp., 2009-2368 (La. 10/19/10), 48 So. 3d 234, 245.

---

[3] The LPLA "establishes the exclusive theories of liability for manufacturers for damages caused by their products." La. Rev. Stat. Ann. § 9:2800.52; Jefferson v. Lead Indus. Ass'n, Inc., 106 F.3d 1245, 1250 (5th Cir. 1997). "A plaintiff may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability not set forth in the LPLA." Jefferson, 106 F.3d at 1250–51 (citing La. Rev. Stat. Ann. § 9:2800.52). "Courts have consistently held the LPLA subsumes all possible causes of action, with the exception of a claim in redhibition." Touro Infirmary v. Sizeler Architects, 2004-2210, p. 2 (La. App. 4 Cir. 11/21/06); 947 So. 2d 740, 744. Therefore, the Palacios' breach of express warranty, design defect, and construction or composition defect claims are all governed by the LPLA.

The Palacios argue that the discovery rule, a sub-category of the doctrine of contra non valentem, applies here. Pls.' Resp. 3.

> The doctrine of contra non valentem provides that prescription does not run against one who is ignorant of the facts upon which their cause of action is based and applies an exception to the statutory prescriptive period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues.

Eastin v. Entergy Corp., 2003-1030, p. 6 (La. 2/6/04), 865 So. 2d 49, 55 (citations omitted) (emphasis in original); see also Marin, 48 So. 3d at 245 ("where the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant," the doctrine prevents the running of liberative prescription). The discovery rule applies in cases involving property damage. Id. Under the discovery rule, "prescription commences on the date the injured party discovers or should have discovered the facts upon which his cause of action is based." Eastin, 865 So. 2d at 56. "When a plaintiff acts reasonably to discover the cause of a problem, 'the prescriptive period [does] not begin to run until [he has] a reasonable basis to pursue a claim against a specific defendant.'" Chevron USA, Inc. v. Aker Mar., Inc., 604 F.3d 888, 894 (5th Cir. 2010) (quoting Jordan v. Emp. Transfer Corp., 509 So.2d 420, 424 (La.1987)). "This standard is exceedingly stringent and should be applied only in exceptional circumstances." Id. "The jurisprudence is clear that this 'discovery' does not require certain knowledge but merely sufficient information to incite curiosity as to the cause of the discomfort." Knipper, 620 So. 2d at 1371 (citing Speights v. Caldwell Mem'l Hosp., 463 So. 2d 881 (La. App. 2d Cir. 1985)).

Pella attaches a service request dated January 16, 2007 in which the Palacios complain of "water leaking." Def.'s Mot. Ex. 2. Pella asserts that as of January 2007, the defect had manifested itself and the Palacios were aware of facts upon which the

8

cause of action is based.  Def.'s Mot. 20.  Therefore, Pella argues that even if the court applies contra non valentem, the prescriptive period would have ended, at the latest, in January 2008—over six years before the Palacios filed this action.  Id.

The Palacios rely on Jordan v. Emp. Transfer Corp., 509 So. 2d 420 (La. 1987), to argue that they did not have a reasonable basis to conclude that they had a claim against Pella to start the prescriptive period.  In Jordan, the plaintiffs noticed water in the den of their home on October 1, 1982.  Id. at 421.  The plaintiffs hired someone to clean the den, and the cleaner suggested that the water in the den could have been caused by either flashing on the roof around the chimney, cracks in the foundation, or a broken pipe.  Id. at 422.  After inspecting the house, an insurance adjuster concluded that the water had probably come in from a leaking flashing where the chimney met the roof and agreed to pay for the damage.  Id.  On December 1, 1982, the den flooded a second time and the plaintiffs could see water seeping through the foundation.  Id.  At that point, they obtained a previously-completed engineering report which indicated that the foundation was structurally damaged.  Id.  The plaintiffs filed suit in redhibition on December 1, 1983, seeking to rescind the sale and obtain damages.  Id.

The Louisiana Supreme Court held that when the plaintiffs first discovered water in the den, "[t]hey reasonably suspected that the water had entered between the flashing and the chimney."  Id.  The court noted that the plaintiffs did not discover the origin of the leak until the second time the den flooded.  Id.  Therefore, the court determined that the plaintiffs' suit was timely because it was not until December 1, 1982 that the plaintiffs had a "reasonable basis to pursue a claim against a specific defendant."  Id. at 424.  In doing so, the Louisiana Supreme Court distinguished another case in which the

Louisiana Court of Appeal determined that a plaintiff who noticed water seeping into his den more than a year before filing suit could not bring suit, noting that "[t]here was no question about the source of the water." Id. (citing Lee v. Equitable Life Assur. Soc. of U. S., 391 So. 2d 37, 39 (La. Ct. App. 1980)).

     Here, there is no indication that the Palacios believed that the water leaking into their house was caused by anything other than problems with the windows. The Palacios clearly knew of the underlying facts giving rise to their state law claims by January 2007 when they requested service for leaking windows. The fact that they brought warranty claims, Compl. ¶ 71, under the limited warranty which promised to fix "defect[s] in materials or workmanship" further demonstrates that there was no question regarding the source of the water. Def.'s Reply Ex. 1. Because the Palacios thought that the windows were responsible for the water damage when they made their warranty claims, they were "responsible to seek out those whom [they] believe[d] may be responsible for a specific injury." Jordan, 509 So. 2d at 423. It is notable that the Palacios do not even attempt to provide a date for when they discovered facts upon which their cause of action is based in their response. The fact that they started having problems in 2007, and did not file suit until 2014, demonstrates that this case does not warranty application of the "exceedingly stringent" doctrine of contra non valentem. Under these circumstances, even if the court were to apply the more lenient discovery rule, the prescriptive period ended at the latest in January 2008, one year after the Palacios discovered the leaking windows. Therefore, the Palacios' LPLA claims were all filed after the one-year prescriptive period and are subject to dismissal. See Marin, 48 So.2d at 246 ("[K]nowledge sufficient to start the running of prescription 'is the acquisition of sufficient information, which, if pursued,

10

will lead to the true condition of things.'" (quoting Young v. Int'l Paper Co., 179 La. 803, 155 So. 231 (La. 1934))).

### b.     Redhibition

The prescriptive period of redhibition claims is specified by La. Civ. Code art. 2543, which provides:

> A. (1) The action for redhibition against a seller who did not know of the existence of a defect in the thing sold prescribes in four years from the day delivery of such thing was made to the buyer or one year from the day the defect was discovered by the buyer, whichever occurs first.
>
> (2) However, when the defect is of residential or commercial immovable property, an action for redhibition against a seller who did not know of the existence of the defect prescribes in one year from the day delivery of the property was made to the buyer.
>
> B. The action for redhibition against a seller who knew, or is presumed to have known, of the existence of a defect in the thing sold prescribes in one year from the day the defect was discovered by the buyer.
>
> C. In any case prescription is interrupted when the seller accepts the thing for repairs and commences anew from the day he tenders it back to the buyer or notifies the buyer of his refusal or inability to make the required repairs.

Pella argues that regardless of whether it did or did not know of the alleged defects at the time of sale, the prescriptive period has expired. Def.'s Mot. 21. Pella argues that if it did not know of the defect, the prescriptive period would have ended in 2005, four years after the windows were delivered. Id. If Pella was aware of the defect, Pella argues that the analysis above applies and the prescriptive period expired by at least January 2008, one year after the Palacios first complained of problems with the windows. Id.

For their part, the Palacios argue that there is "no indication that, at [the time the windows began leaking], plaintiffs could have plead and prove (sic) their case against Pella." Pls.' Resp. 5. They claim that they did not discover their cause of action "until

11

some point thereafter, the precise date of which will be determined during discovery." Id. In Lee v. Equitable Life Assurance Society of the United States, 391 So. 2d 37, 38 (La. Ct. App. 1980), cited by the Jordan court, a home purchaser sued for redhibition more than one year after he noticed water seeping into the den of the home. The Louisiana Court of Appeal held that the "plaintiff had sufficient notice that a defect existed in the house when he first discovered water seeping into the den" and that "[s]uch notice was enough to trigger the running of the prescriptive period applicable to redhibitory actions." Id. at 39. The court reasoned that "[t]he occurrence of the water seepage was sufficient to put the plaintiff on guard that a vice in the house existed" and that "[t]his notice was sufficient to commence the running of prescription." Id. at 39.

Here, the Palacios clearly noticed problems with the windows by January 2007 when they filed their first warranty claim. As of January 2007, the Palacios had a reasonable basis to pursue a claim against Pella, and the prescriptive period expired by January 2008. Therefore, the court dismisses the Palacios' redhibition claim.

### 5. Declaratory Judgment

Pella argues that the Palacios' declaratory relief claim fails because it lacks a substantive foundation and because the Palacios have an adequate remedy at law. Def.'s Mot. 14.

The Declaratory Judgment Act states that

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C.A. § 2201. The Declaratory Judgment Act is intended to help parties resolve legal disputes before either party can seek or has sought a coercive remedy through the

courts.  10B Charles Alan Wright & Arthur A. Miller, Federal Practice and Procedure § 2751 (3d ed. 1998).  Courts have "long recognized the discretion afforded to district courts in determining whether to render declaratory relief."  Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 421–22 (4th Cir. 1998).

Declaratory relief is inappropriate at this stage, as the merits of the Palacios' substantive claims have not been adjudicated.  See Kennedy v. MI Windows & Doors, Inc., No. 2:12-cv-2305, 2013 WL 267853, at *6 (D.S.C. Jan. 24, 2013); F.D.I.C. v. OneBeacon Midwest Ins. Co., 883 F. Supp. 2d 754, 761–62 (N.D. Ill. 2012) (dismissing a declaratory relief claim that raised the same issue as a substantive legal claim already before the court); Vill. of Sugar Grove v. F.D.I.C., 2011 WL 3876935, at *9 (N.D. Ill. Sept. 1, 2011) ("We have discretion to decline to hear a declaratory judgment action and courts have exercised that discretion where a plaintiff seeks a declaratory judgment that substantially overlaps it substantive claims") (internal citations omitted); Monster Daddy LLC v. Monster Cable Prods., Inc., No. 6:10-cv-1170, 2010 WL 4853661, at *6 (D.S.C. Nov. 23, 2011) (dismissing three declaratory relief counterclaims because they "raise the same legal issues that are already before the court").

Therefore, the court dismisses the Palacios' claim for declaratory relief.

### B.     The Palacios' Motion to Remove Enrique as Class Representative and Motion for Protective Order

The Palacios move to remove Enrique as a class representative because he is a doctor and his surgery schedule prevents him from performing the duties incumbent on a class representative.  See Fed. R. Civ. P. 23(a)(4) (requiring that class representatives be able to "fairly and adequately protect the interests of the class").  The Palacios further move for a protective order requesting the court to excuse him from being deposed.  In

the briefing, Pella did not oppose the motion, but argued that Enrique's withdrawal as proposed class representative does not vitiate Pella's right to depose him as a named plaintiff regarding his knowledge of his own claims. During the February 9, 2015 hearing, Pella's counsel represented that they were "happy to have Dr. Palacios removed as a . . . class representative . . . and are happy to have him not be deposed since he agreed that he woundn't testify at trial and had no knowledge." Feb. 9, 2015 H'rg Tr. 109:25–110:4.

Therefore, the court grants the Palacios' motion to dismiss Enrique Palacios as class representative and for a protective order excusing him from being deposed.

## IV.  CONCLUSION

For the reasons set forth below, the court **GRANTS** Pella's motion to dismiss and **GRANTS** the Palacios' motion to dismiss and motion for a protective order.

**AND IT IS SO ORDERED**.

 

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**October 27, 2015**
**Charleston, South Carolina**